1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   RRW LEGACY MANAGEMENT              CASE NO. C14-326 MJP
     GROUP, INC.,

11                                      ORDER ON DEFENDANT'S
                                        MOTION FOR SUMMARY
                        Plaintiff,      JUDGMENT

12

            v.

13

14   CAMPBELL WALKER,

                        Defendant.

15

16

17           The Court, having received and reviewed:

18       1.  Defendant Campbell Walker's Motion for Summary Judgment (Dkt. No. 9),

19       2.  Plaintiff's Response in Opposition to Defendant Campbell Walker's Motion for

20           Summary Judgment (Dkt. No. 15), and

21       3.  Defendant Campbell Walker's Reply in Support of Motion for Summary Judgment

22           (Dkt. No. 20).

     and all attached declarations and exhibits, and having heard oral argument on the matter, makes

23

     the following ruling:

24

1    IT IS ORDERED that the motion is DENIED.

2    **<u>Background</u>**

3    **A. Argyll Limited Partnership**

4    Robert R. Walker formed Argyll Limited Partnership ("Argyll") in 1992; Argyll is

5    governed by a limited partnership agreement ("the Agreement") subject to Washington law.

6    (Dkt. No. 11-1 at 5, 22; Dkt. No. 11 at 2.)  Under the Agreement, Robert R. Walker became the

7    general partner, and he and his five children – Defendant Campbell Walker ("Campbell"),

8    Victoria Walker Councell ("Victoria"), Cody C. Walker, Antoinette R. Walker ("Antoinette"),

9    and Robert Angus Walker ("Angus") – became limited partners.  (Dkt. No. 11-1 at 5; Dkt. No.

10   11 at 2.)   Under the Agreement, Robert R. Walker had a five percent interest as general partner

11   and a 20 percent interest as a limited partner.  (Dkt. No. 11-1 at 7.)  The children each had 15

12   percent interests as limited partners.  (<u>Id.</u>)

13   The general partner had "exclusive power and authority to manage" Argyll's business

14   and affairs.  (<u>Id.</u> at 13.)  Limited partners cannot vote on any matter except for "removal and

15   selection of a successor" to the general partner.  (Dkt. No. 11-1 at 14.)  As stated in the

16   Agreement, the limited partners can remove the general partner "for cause," which includes the

17   general partner's acts of fraud, larceny, willful misconduct, deceit or a "crime otherwise

18   involving moral turpitude, willful misrepresentation to Partners, or the continued and habitual

19   misuse of alcohol or any use of controlled substances." (<u>Id.</u> at 15.)  An "affirmative vote of

20   Limited Partners having a majority of the Limited Partners' Partnership Interests" is necessary to

21   remove the general partner for cause.  (<u>Id.</u> at 14.)

22   Once the general partner is removed, the limited partners have 30 days to select a new

23   general partner, and the "[s]election shall occur upon agreement of Limited Partners holding

24   60% or more of the Limited Partners' Partnership Interests."  (Dkt. No. 11-1 at 17.)  The new

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 2

1   general partner "shall, unless already acquired by him or her, purchase the Partnership Interest of

2   the General Partner[.]"  (Id. at 16.)

3   **B.  Events After Campbell Succeeded Robert R. Walker as General Partner**

4       In 1999, Robert R. Walker appointed Campbell to succeed him as general partner and

5   assigned him his five percent interest as general partner.  (Dkt. No. 11 at 2.)  Robert R. Walker's

6   20 percent interest as limited partner was distributed equally among Campbell and the other four

7   children.  (Id.)  Each of Robert R. Walker's children then had a 19 percent interest as a limited

8   partner, and Campbell had an additional five percent interest as general partner.  (Id.)

9       In 2014, Antoinette, Victoria, and Angus voted to remove Campbell as general partner.

10  (Dkt. No. 11-2 at 2.)  Just after Campbell's removal, the same three siblings that removed

11  Campbell voted to appoint RRW Legacy Management Group, Inc. ("RRW Legacy") as the

12  successor general partner.  (Dkt. No. 11 at 3; Dkt. No. 11-3 at 2.)  Antoinette is the president and

13  sole shareholder of RRW Legacy.  (Dkt. No. 15 at 7.)

14  **C.  Procedural Posture**

15      RRW Legacy sued Campbell on February 26, 2014, in King County Superior Court,

16  seeking a declaratory judgment that Campbell was properly removed as general partner and

17  RRW Legacy was properly appointed as the new general partner.  (Dkt. No. 2-1 at 4.)  The suit

18  was removed to this Court on March 7, 2014.  (Dkt. No. 1.)  Campbell has countersued and

19  asserted several counterclaims, including declaratory judgment, civil conspiracy, tortious

20  interference, violation of RCW 25.10.331 and RCW 25.10.431, and breach of duty of good faith

21  and fair dealing.  (Dkt. No. 7.)  Campbell now moves for summary judgment, requesting a

22  declaratory judgment he was not removed "for cause" and RRW Legacy was not appointed

23  pursuant to the Agreement.  (Dkt. No. 9.)  Discovery has not commenced.  (Dkt. No. 13; Dkt.

24  No. 9 at 7.)

1

2                                  **Discussion/Analysis**

3        **A.  Legal Standard**

4            Summary judgment is appropriate under Fed. R. Civ. P. 56(a) "if the movant shows that

5   there is no genuine dispute as to any material fact."  See Celotex Corp. v. Catrett, 477 U.S. 317,

6   327 (1986).  Inferences drawn from the underlying facts must be viewed in the light most

7   favorable to the non-moving party.  Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp.,

8   475 U.S. 574, 587 (1986).  When the moving party has met its burden of showing no genuine

9   issue of fact exists, "its opponent must do more than simply show that there is some

10  metaphysical doubt as to the material facts."  Id. at 586.  The non-moving party must come

11  forward with specific facts showing a genuine issue exists for trial.  Id. at 587.  No genuine issue

12  for trial exists if the "record taken as a whole could not lead a rational trier of fact to find for the

13  non-moving party."  Id.

14       **B.  "For Cause" Removal of Campbell**

15          Defendant denies committing any act which would have constituted "for cause" grounds

16  for removal under the Agreement.  (Campbell Decl. ¶ 14.)  He attacks the complaint and the

17  declarations of his siblings for failure to articulate with specificity the facts which constituted the

18  cause for which he was removed.

19          "[Summary] judgment 'shall be entered' against the nonmoving party unless affidavits or

20  other evidence 'set forth specific facts showing that there is a genuine issue for trial.'"

21  Matsushita Elec. Indus. Co., 475 U.S. at 587.  The Court agrees that, as regards the declarations

22  of Angus and Victoria, specific facts are lacking.  Angus alleges that Defendant has engaged in

23  "many years of deceit, willful misconduct and willful misrepresentations" (Angus Decl. ¶ 3);

24  Victoria claims to have witnessed "an on-going pattern of deceit, willful misconduct, and willful

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 4

1    misrepresentations." (Victoria Decl. ¶ 3.)  Angus provides no specific examples of the conduct

2    he alleges.  Victoria's declaration does recount some incidents (Id. ¶¶ 3, 4, 5), but her allegations

3    are vague as to date, place and other specifics, and are lacking in corroborative evidence.

4         While Antoinette's declaration suffers from some of these same defects, the Court finds

5    that she provides sufficient factual information supporting her allegations to demonstrate "a

6    genuine issue for trial" sufficient to defeat summary judgment.  She recounts several occurrences

7    for which she provides dates and corroborating evidence in support of her assertions of

8    Defendant's "many acts of deceit and willful misconduct." (Antoinette Decl. ¶¶ 3, 5-14.)

9    Although whether these incidents ultimately satisfy the "for cause" requirements of the

10   Agreement will be a question for the trier of fact, this Court (viewing every inference from these

11   facts in the light most favorable to the nonmoving party) finds them sufficient to create "a

12   genuine issue for trial" and denies Defendant's summary judgment request on that basis.

13   **C. Appointment of Plaintiff as Successor General Partner**

14        By his motion, Defendant attacks the validity of the appointment of Plaintiff RRW

15   Legacy as successor General Partner.  Two of his grounds for doing so may be dispensed with

16   quickly.  He first claims the appointment was invalid because his removal from the General

17   Partner position was improper – since the Court has already declined to reach that issue at this

18   time, the propriety or impropriety of Defendant's removal will not determine the question of the

19   propriety of succession, either.

20        Secondly, Defendant argues that RRW Legacy's appointment is invalidated by the failure

21   to purchase his General Partnership interest as prescribed by the Agreement.  (*See* Campbell

22   Decl., Ex. A, ¶ 7.4(d); hereinafter "the Agreement.")   Not only are there clear issues of disputed

23   material fact concerning whether Defendant has cooperated in the process of valuing and

24

1  purchasing the General Partnership interest (*see* Antoinette Decl. ¶¶ 18-23), but the Court agrees

2  with the point made by Plaintiff during oral argument on this motion: as long as Defendant

3  disputes whether he was properly removed, it is not in his best interest to acquiesce in the sale of

4  the General Partnership shares, and equity requires that he not be heard to argue that the failure

5  to purchase them at this time somehow invalidates the appointment of his successor.[1]

6      Defendant's third argument concerning the invalidity of RRW Legacy's appointment is

7  more substantive.  The Agreement states:

8      [Argyll] shall be terminated unless a new General Partner is selected within sixty
       (60) days of the date on which the Partnership no longer had a general partner.

9      The Limited Partners first shall be given a period of thirty (30) days in which to
       select a new General Partner.  Selection shall occur upon agreement of the

10     Limited Partners holding 60% or more of the Limited Partners' Partnership
       Interests.

11
12 Agreement, ¶ 7.6.

      As long as Robert Walker held the position of General Partner, regardless of how the

13 term "Limited Partners' Partnership Interests" was defined it would require a vote by at least

14 four of the Limited Partners to achieve a 60% majority and approve the selection of a successor

15 General Partner.   When Robert stepped down as General Partner, named Campbell as his

16 successor and distributed his Limited Partner shares among the five siblings/Limited Partners,

17 however, the situation became considerably less well-defined.

      Under the configuration of Argyll as it existed at the time the vote was cast to oust

19 Campbell as General Partner, depending on how the term "Limited Partners' Partnership

20
21
22
      [1] Finally, on the issue of the sale of the General Partnership interest, the Court concurs with Plaintiff's
23 other point made at oral argument: that § 9 of the Agreement sets no timeline for the purchase of the General
   Partnership shares, nor any requirement that the transfer of interest occur simultaneously with the appointment of the
24 successor.

1  Interests" is defined, the vote to install RRW Legacy as the successor General Partner was either

2  proper or improper:

3     1.  If "Limited Partners' Partnership Interest" is defined as "the total interest held by each

4        Limited Partner *in his/her capacity as Limited Partner*" (i.e., 95% of the total of <u>all</u>

5        shares) then the combined interest held by Antoinette, Victoria, and Angus (57% of the

6        total of <u>all</u> shares) equals 60% of the shares allotted to the Limited Partners *in their*

7        *capacity as Limited Partners*;

8     2.  If "Limited Partners' Partnership Interest" is defined as "the total interest, including the

9        General Partnership share, held by each Limited Partner," then the combined interest held

10        by Antoinette, Victoria and Angus falls short of 60%.

11       Unsurprisingly, Plaintiff advocates for the former definition while Defendant insists that

12  the latter is the only proper reading of the Agreement.  It is the finding of this Court that the term

13  is ambiguous and that the Agreement on its face offers no clear-cut evidence of which

14  interpretation is correct.  On that basis, the Court must deny summary judgment for Defendant

15  on this issue.

16       It is the law of Washington State that:

17
18
19  > [E]xtrinsic evidence may be relevant in discerning [ ] intent, where the evidence gives meaning to words used in the contract.  <u>Nationwide Mut. Fire Ins. Co. v. Watson</u>, 120 Wash.2d 178, 189, 840 P.2d 851 (1992) (extrinsic evidence illuminates what was writeen not what was intended to be written).  However admissible extrinsic evidence does *not* include:

20  >     • Evidence of a party's unilateral or subjective intent as to the meaning of a contract word or term

21  >     • Evidence that would show an intention independent of the instrument; or

22  >     • Evidence that would vary, contradict or modify the written word.

23  <u>Hollis v. Garwall, Inc.</u>, 137 Wn.2d 683, 696-97 (1999) (emphasis in original; further citations

24  omitted).

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 7

1

2    The Court does find the Agreement to be ambiguous.

3                              **<u>Conclusion</u>**

4

5        The Court finds that genuine issues of disputed material fact preclude the granting of

6    summary judgment on the question of whether Defendant's removal from the position of General

7    Partner was justified under the Agreement.  The Court further finds that the ambiguity of the

8    Agreement prevents an award of summary judgment on the question of whether Plaintiff RRW

9    Legacy was properly selected as the successor General Partner following Defendant's removal.

10       Defendant's motion for summary judgment is DENIED.

11

12

13       The clerk is ordered to provide copies of this order to all counsel.

14       Dated: June 2, 2014.

15

16

17       _____
         Marsha J. Pechman

18       United States District Judge

19

20

21

22

23

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 8