Hon. Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RRW LEGACY MANAGEMENT GROUP, INC., a Washington corporation, and ANTOINETTE WALKER, individually and as a Limited Partner of Argyll Limited Partnership,<br><br>Plaintiffs,<br><br>v.<br><br>CAMPBELL WALKER,<br><br>Defendant. | No. 2:14-cv-00326MJP<br>(Consolidated with 2:14-cv-1544)<br><br>PLAINTIFF RRW'S MOTION FOR ATTORNEY FEES AND COSTS<br><br>**Note on Motion Calendar:**<br>**Friday, August 26, 2016**<br>**Without Oral Argument** |
| CAMPBELL INVESTMENT COMPANY, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>CAMPBELL M. WALKER, a foreign individual,<br><br>Defendant. | |

## I. INTRODUCTION AND RELIEF REQUESTED

Plaintiff RRW ("RRW"), pursuant to Fed. R. Civ. P. 54(d)(2)(A), respectfully moves the Court for an award of its reasonable and necessary attorney fees incurred in



LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

pursuing its claims against Defendant Campbell Walker.[1]

## II. SUMMARY OF FACTS

### A. Argyll Limited Partnership and CIC

The patriarch of the Walker family, Robert R. Walker ("Robert"), formed Argyll Limited Partnership ("Argyll") in 1992. Dkt. 141 at 3. Argyll is governed by a limited partnership agreement ("the Agreement") subject to Washington law. *Id*. Under the Agreement, Robert became the general partner, and he and his five children—Defendant Campbell Walker ("Campbell"), Victoria Walker Councell ("Victoria"), Cody C. Walker ("Cody"), Plaintiff Antoinette R. Walker ("Tia"), and Robert Angus Walker ("Angus")—became limited partners. *Id.*

Argyll was created to manage Robert's shares in Campbell Investment Company, Inc. ("CIC"), a closely-held family corporation which functioned as an investment vehicle for the Walker family. *Id*. at 4. Argyll is the largest shareholder in CIC, and thus the Argyll general partner controls the management of CIC. *Id*. The remaining siblings were minority shareholders of CIC during the period in question. *Id.* at 5. Robert was the general partner of Argyll and President of CIC until 1999, when he appointed Defendant to succeed him. *Id.*

Between 1999 and 2014, Defendant engaged in systematic and deliberate breaches of his duties, including concealing Argyll's books and records from the limited partners, failing to properly maintain those books and records, misrepresenting to the limited partners regarding their rights and interests, and taking millions of dollars in assets from Argyll and CIC for his own personal use. *Id.* at 6–18, Dkt. 171.

In January 2014, by consent of three of the five limited partners of Argyll—Tia, Tori, and Angus—Defendant was removed as general partner of Argyll for cause. Dkt.

---

[1] RRW's co-Plaintiff Antoinette Walker does not seek to recover fees on her individual claims, and thus does not join this motion. *See supra* at V.B.2.



LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

141 at 5**.** The removing limited partners then appointed RRW, a Washington corporation, as the new general partner. *Id.* Tia is president and sole shareholder of RRW. *Id.* CIC's shareholders then removed Defendant from CIC's board. *Id*. Tia is currently the President of CIC. *Id*.

**B. Procedural History**

As Defendant continued to challenge his removal, RRW filed suit against Defendant in February 2014 seeking a declaratory judgment that Defendant had been properly removed as general partner, and RRW had been properly installed as his successor. Dkt. 1. In October 2014, CIC brought suit against Defendant seeking damages for Defendant's breaches of fiduciary duty. CIC's suit was later consolidated with RRW. Dkt. 85.

In October 2015, this Court granted summary judgment for RRW on RRW's declaratory claims. Dkt. 141. The Court found that Defendant had engaged in numerous forms of willful misconduct that supported his removal as general partner of Argyll, including (1) violating the limited partners' rights to review partnership information; (2) failing to maintain the books and records of Argyll and CIC in Washington; and, most importantly, (3) engaging in self-dealing by, among other things, causing CIC to pay millions of dollars in unjustified "management fees" to an entity owned by Defendant. Dkt. 141 at 8–10. The Court concluded that "Defendant was aware of his duties and obligations under the law and under the Agreement and that ***his failure, through his intentional acts, to abide by those duties and obligations qualifies as 'willful misconduct' justifying his removal***." *Id.* at 10 (emphasis added). At the same time, the Court also granted summary judgment for CIC on the issue of Defendant's liability for breaches of fiduciary duty. Dkt. 16–18.

This Court conducted a bench trial on October 27 and 28, 2015 and January 11, 2016 on the issue of CIC's damages caused by Defendant's breaches. Dkt. 180–82. As



LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

RRW had brought only claims for declaratory relief that were resolved on summary judgment, RRW's claims were no longer at issue during the trial.

After post-judgment briefing on a limited motion for reconsideration and various pre-judgment interest issues Defendant raised, on July 28, 2016, the Court entered judgment in favor of RRW on its declaratory relief claims and for CIC on its damage claims in the amount of $6,271,645.68. Dkt. 203 at 5.

## III. ISSUE PRESENTED

Should the Court enter an award of RRW's attorney fees and non-taxable costs incurred in pursuit of its claims against Defendant Campbell Walker?

## IV. EVIDENCE RELIED UPON

Plaintiff RRW relies upon the Declaration of Malaika M. Eaton and Exhibits A–F attached thereto, and the records on file herein.

## V. ARGUMENT

RRW requests an award of its attorney fees incurred in this matter pursuant to Fed. R. Civ. P. 54(d)(2)(A), which provides that a claim for attorney's fees and related non-taxable expenses may be made by motion after the entry of judgment.

### A. The Court Should Exercise Its Discretion to Award RRW Its Attorney Fees and Non-Taxable Costs

The claims in this case are governed by Washington law. Dkt. 141 at 3. Under Washington law, a court may award attorney fees based on a contract, statute, or recognized equitable grounds. *Pub. Util. Dist. No. 1 v. Kottsick*, 86 Wn.2d 388, 389, 545 P.2d 1 (1976). In Washington, courts have the equitable discretion to award attorney fees in cases involving a partner's breach of his fiduciary duty. *Green v. McAllister,* 103 Wn. App. 452, 467, 14 P.3d 795 (2000), citing *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 798, 557 P.2d 342, 344 (1976). This doctrine is applicable here.

In *Tang*, a plaintiff brought an action for an accounting and dissolution against the



LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

managing partner of a real estate management partnership. The court discussed the conduct of the partnership manager, Mr. Tang, which gave rise to the controversy:

> [H]e kept no records of the names of the tenants nor the amount of rentals collected. He deposited the partnership's funds in the same bank account in which he held his personal funds. Out of this same bank account he disbursed the partnership's expenses and his personal expenses. He kept no records of which disbursements were for partnership expenses. When petitioner requested an accounting, respondent failed to produce an accounting, because he had kept no records and had commingled the funds and disbursements.

*Id.* at 799–800. The court found that Tang's "negligent breach of his fiduciary duty to petitioner is tantamount to constructive fraud." *Id.* at 801. The court awarded fees to the plaintiff, finding that "[a] partner should share the expense of a lawsuit when he breaches his fiduciary duty to the other partners." *Id.* at 801.

The facts of this case are very similar to the facts of *Tang*—except that Defendant's behavior was significantly more extreme than Tang's. In *Tang*, the court found that Defendant's breach had been merely negligent. Here, the Court explicitly found that Defendant's behavior was knowing and intentional.

The Court found that Defendant failed to properly maintain the books and records of Argyll and CIC and hid information from his siblings for years in an effort to conceal millions of dollars in payments to himself at Argyll and CIC's expense. *See generally* Dkt. 141, 171. Regarding this behavior, the Court explicitly held that "[t]here is no question that Defendant behaved intentionally in refusing to provide financial information upon request, moving the partnership records out of the State of Washington and choosing to pay millions of dollars to Darshan," an entity owned by Defendant, in the guise of unauthorized "management fees" paid from CIC to Darshan. Dkt. 141 at 5, 15–16. The Court found that Defendant paid himself over $1 million in loans from Darshan that he never repaid. *Id.* at 15–16. The Court also found that "[i]n a crowning act of self-dealing," Defendant ordered the CIC bookkeeper to pay Darshan $50,000 in additional



LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

unauthorized management fees on the day of his removal as General Partner. *Id*.

Under *Tang*, this is certainly a breach of fiduciary duty that is "tantamount to constructive fraud" justifying an award of fees. *Id.* Other courts have stated that an award of fees is appropriate when a partner acts to take partnership assets for his own benefit at the expense of his partners. *See, e.g., Green*, 103 Wn. App. at 466–67 (ordering trial court to consider whether breach of fiduciary duty justified award of fees to plaintiff; holding that "[d]isposing of partnership assets in an attempt to divest another partner of his interest in the property is a breach of fiduciary duty that constitutes constructive fraud."); *Simpson v. Thorslund*, 151 Wn. App. 276, 288, 211 P.3d 469, 476 (2009) (award of attorneys' fees justified in part because "[partner's] conduct was []egregious and persistent in violating his fiduciary duties" by "misappropriating company funds for his own use in derogation of his partner's rights."). Indeed, Defendant himself sought fees in his answer and counterclaims. Dkt. 7 at 10; Dkt. 74 at 14.

**B. RRW's Attorney Fees Are Reasonable**

Washington law governs the method by which this Court calculates an award of attorney's fees and costs. *Mangold v. Cal. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir.1995) ("... Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees."). Washington courts apply the "lodestar" method to calculate an award of attorney's fees. *See e.g. Crest. Inc. v. Costco Wholesale Corp*., 128 Wn. App. 760, 764, 115 P.3d 349 (2005) ("In determining the amount of attorney fees to be awarded to the prevailing party, the proper method for calculating a reasonable award of attorney fees is the lodestar method.").

To calculate the lodestar, the Court must multiply "the total number of hours reasonably expended in the litigation by the reasonable hourly rate." *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 149–50, 859 P.2d 1210 (1993). "Once the lodestar has been calculated, the court may adjust the fee to reflect factors not considered yet." *Clausen v.*



LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Icicle Seafoods, Inc*., 174 Wn.2d 70, 81, 272 P.3d 827 (2012). "[T]wo categories of adjustment are based on whether the fee was contingent on the outcome and the quality of the work performed." *Id*. "The party requesting an adjustment has the burden to show the deviation is justified." *Id*. This Court has recently applied the Washington "lodestar" analysis when entering an award of fees. *See Ramgen Power Sys. LLC v. Agilis Eng'g Inc*., No. C12-1762 MJP, 2015 WL 362733, at *1 (W.D. Wash. Jan. 27, 2015) (Pechman, J.).

**1. The Hourly Rates Are Reasonable**

"In determining the attorney's reasonable hourly rate, the trial court may consider the skill level the litigation requires, the time limitations the litigation imposes, the size of the potential recovery, the attorney's reputation, and the undesirability of the case." *Smith v. Behr Process Corp*., 113 Wn. App. 306, 341, 54 P.3d 665 (2002). "Where the attorneys in question have an established rate for billing clients, that rate will likely be a reasonable rate." *Bowers*, 100 Wn.2d at 579; *see also Herrera v. Singh*, 103 F. Supp. 2d 1244, 1253 (E.D. Wash. 2000) ("The usual billing rate for a comparable attorney is a main factor."). "Calculations of the reasonable rate will also be guided by the marketplace." *Castello v. City of Seattle*, No. C10-1457MJP, 2011 WL 219671, at *2 (W.D. Wash. Jan. 24, 2011).

Here, RRW seeks fees determined by applying the established rates typically charged by RRW's counsel, McNaul Ebel Nawrot & Helgren PLLC ("McNaul"). Those hourly rates are detailed in the Declaration of Malaika Eaton ("Eaton Decl.") filed with this Motion, and, range from $195 to $480 for the McNaul paralegals and attorneys who worked on this litigation. *See* Eaton Decl. ¶¶ 5, 7–11. These rates are reasonable given the background and experience of McNaul's attorneys; the skill required by the undisputed factual complexity of this action; the importance of the issues raised in the litigation to RRW, Argyll, CIC, and their partners/shareholders; and the prevailing rates in the Seattle-area legal market. *See id.* ¶ 6. Accordingly, RRW requests that the Court find



LAW OFFICES OF
McNaul Ebel Nawrot & Helgren PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

that RRW counsel's rates are reasonable.

McNaul's hourly rates are as follows:

| Name | Position | 2014 Rates | 2015 Rates |
|---|---|---|---|
| M. Eaton | Partner | $365 | $375 |
| W. Carleton | Partner | $420 | $435 |
| P. Vial | Partner | $480 | n/a |
| C. Archer | Associate | $300 | $310 |
| C. Martirosian | Associate | n/a | $310 |
| K. Walker | Associate | $260 | n/a |
| C. Isacke | Associate | $290 | $300 |
| J. Kamish | Contract Attorney | n/a | $300 |
| K. Anderson | Paralegal | $195 | $200 |
| A. Stanton | Paralegal | $195 | n/a |

**2. The Amount of Hours Expended Is Reasonable**

In order to determine if the number of hours expended is reasonable, the attorneys "'must provide reasonable documentation of the work performed. This documentation need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work (i.e., senior partner, associate, etc.).'" *Miller v. Kenny*, 180 Wn. App. 772, 822, 325 P.3d 278 (2014). McNaul's invoices associated with this matter are submitted as **Ex. B**.[2]

The amount of time expended by RRW on this matter was reasonable. This litigation was undeniably complex, as it involved untangling 15 years of wrongdoing on the part of Defendant while he was in control of the interrelated entities, Argyll and CIC. Eaton Decl. ¶ 13. It also involved discovery relating to a number of overseas entities and trusts. In an effort to mask his self-dealing transactions, Defendant had failed to properly

[2] Ex. B has been redacted so as to protect information under the attorney-client and work product privileges. Upon the Court's request, RRW will submit unredacted versions of the invoices for the Court's *in camera* review. Separately from the redactions for privilege, billing entries reflecting hours ***excluded*** from RRW's petition (*see supra* at V.B.2) are redacted in their entirety (so as not to show the timekeeper, number of hours, or rate) from the invoices included in Ex. B.



LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

maintain the books and records of both entities—and in discovery, it became clear that what records did exist were in extreme disarray. *Id.* The parties took eight depositions in this case, at least one of which was an out-of-town deposition. *Id.* The case likewise required out of state subpoenas to third parties aligned with Defendant, some of whom were less than fully cooperative in responding to the subpoenas. *Id.* Properly litigating this matter involved many hours of painstaking review of nearly 10,000 documents and significant work with experts to understand the nature and extent of Defendant's wrongdoing. *Id.* This matter also involved a significant amount of briefing, including multiple rounds of summary judgment (one of which was a very early—and unsuccessful—summary judgment brought by Defendant seeking to dismiss the claims against him before discovery). *See* Dkts. 15, 92. This litigation was vigorously contested, and counsel for RRW spent significant time preparing this case for trial before this Court granted summary judgment for RRW—a complete success on the merits for RRW. Eaton Decl. ¶ 13.[3] *See Allard v. First Interstate Bank of Wash*., N.A., 112 Wn.2d 145, 149, 768 P.2d 998, 1000 (1989) ("the novelty and difficult of the questions involved" and "the results obtained" in the litigation among the permissible considerations in determining an award of attorney's fees).

Counsel for RRW worked efficiently to limit the hours billed. Tia Walker personally devoted significant time and effort to document review, reducing the number of necessary attorney hours. Eaton Decl. ¶ 15. Also, counsel for RRW worked closely with counsel for CIC to avoid duplication of effort. *Id.* RRW filed its case first, in March 2014. Dkt. 1. CIC filed its complaint in October 2014, and the cases were consolidated in January 2015. Dkt. 85. As the evidence necessary for RRW's declaratory claims

[3] In October 2015, McNaul, counsel for RRW, associated with counsel for CIC and served as co-counsel for CIC at trial. Dkt. 142. McNaul's fees incurred during its representation of CIC are included with CIC's Motion for Attorney Fees and Costs, filed separately. Eaton Decl. ¶ 14.



LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

overlapped with the evidence necessary for CIC's breach of fiduciary duty claim, counsel for RRW conducted the vast majority of the document discovery and depositions necessary for both cases. *See* CIC Motion for Attorney Fees and Costs at 5; Eaton Decl. ¶ 15.

The total number of hours billed by counsel for RRW for which RRW seeks fees is as follows:[4]

| Name | Position | Hours at 2014 Rates | Hours at 2015 Rates |
|---|---|---|---|
| M. Eaton | Partner | 152.5 | 200.6 |
| W. Carleton | Partner | 38.4 | 6 |
| P. Vial | Partner | 3.3 | n/a |
| C. Archer | Associate | 281.5 | 22.8 |
| C. Martirosian | Associate | n/a | 264.6 |
| K. Walker | Associate | 5.5 | n/a |
| C. Isacke | Associate | 23.6 | 9.5 |
| J. Kamish | Contract Attorney | n/a | 5 |
| K. Anderson | Paralegal | 24 | 93.1 |
| A. Stanton | Paralegal | 9.5 | n/a |
| | | | |
| Total By Year | | 538.3 | 601.60 |
| **TOTAL HOURS: 1139.90** | | | |

This estimate of RRW's lodestar hours is conservative for multiple reasons.

***First***, in an effort to provide the most accurate assessment of counsel's fees, RRW seeks only its actual fees. In situations where the prevailing party's legal fees have been incurred over multiple years, courts have used counsel's current hourly rate in lodestar calculations. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ( "Full compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor."). RRW does not so do here.

[4] In addition to these hourly amounts, RRW plans to seek fees associated with this fee petition. In the event the Court accepts RRW's petition, RRW will submit an additional invoices regarding this petition at a later date.



LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

***Second***, RRW has not requested any variation of the lodestar calculation based on the exceptional outcome received in this case. RRW prevailed on its claims in their entirely, which permits a court to adjust the award in RRW's favor. *See Clausen*, 174 Wn.2d at 81 ("Once the lodestar has been calculated, the court may adjust the fee to reflect factors not considered yet. … [T]wo categories for adjustment are based on whether the fee was contingent on the outcome and the quality of the work performed.").

***Finally***, RRW has limited the hours for which it seeks recovery in the following ways:

- RRW has excluded billing entries relating to Tia Walker's individual claims;
- RRW has excluded billing entries in which time was devoted to both Tia's claims and RRW's claim where it was not feasible to determine the amount of time spent on Tia's claims versus RRW's claims;
- RRW reduced the amount claimed for its Motion for Summary Judgment (*see* Dkt. 92) and related work by one-third because the Motion addressed Tia's individual claims, despite the fact that primary focus of the Motion was RRW's claims and Defendant's counterclaims;[5]
- RRW has excluded billing entries relating to advice from McNaul attorneys regarding corporate, transition, and Walker family issues, including mixed entries where it was not feasible to determine the amount of time spent on this litigation versus other issues;
- RRW removed entries for the attendance of a second lawyer at a court hearing;
- RRW excluded entries relating to ancillary issues unrelated to the core issues in this litigation;
- RRW excluded entries reflecting time spent on settlement;
- RRW excluded entries for time a new associate spent coming up to speed while another associate went on maternity leave.

Eaton Decl. ¶¶ 16–18. Based on these exclusions, RRW has removed approximately 285 attorney and paralegal hours from its lodestar calculation and $96,131 from its total fee

[5] Hourly amounts that have been reduced in this fashion are highlighted in yellow on the invoices attached at **Ex. B**.



LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

request. *Id.*

Given the nature and complexity of the case and the conservative nature of RRW's request, the Court should find that the total number of hours is reasonable.

**3. The Lodestar Calculation Yields a Reasonable Fee Award**

Proper application of the lodestar calculation thus produces the following fee award:

| Name | Position | Hours | Rate(s) | Fee |
|---|---|---|---|---|
| M. Eaton | Partner | 353.1 | $365-$375 | $130,887.50 |
| W. Carleton | Partner | 44.4 | $420-$435 | $18,738 |
| P. Vial | Partner | 3.3 | $480 | $1,584 |
| C. Archer | Associate | 304.3 | $300-$310 | $91,518 |
| C. Martirosian | Associate | 264.60 | $310 | $82,026 |
| K. Walker | Associate | 5.5 | $260 | $1,430 |
| C. Isacke | Associate | 33.1 | $290-$300 | $9,694 |
| J. Kamish | Contract Attorney | 5 | $300 | $1,500 |
| K. Anderson | Paralegal | 117.1 | $195-$200 | $23,300 |
| A. Stanton | Paralegal | 9.5 | $195 | $1,852.50 |
| **TOTAL FEES: $362,530** | | | | |

Considering the conservative nature of RRW's lodestar calculation, the complexity of the case, and the exceptional outcome received by RRW in this matter, the $362,530 total fee request is reasonable under Washington law. Eaton Decl. ¶ 20. RRW requests that the Court award RRW this amount in full.

**C. The Court Should Also Award RRW Nontaxable Costs and Expenses**

In additional to attorney fees, Fed. R. Civ. P. 54(d)(2)(A) allows a prevailing party to recover "related nontaxable expenses," as distinguished from the taxable costs set forth 28 U.S.C. § 1920 that will be separately addressed in RRW's upcoming Bill of Costs. Here, under the same equitable grounds that authorize an award of attorney fees to RRW, RRW should also be allowed to recover the following: $28,921.88 in expert witness fees, $5,763.09 in fees paid to RRW's document management vendor, and $9,170.24 in



LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

computer legal research fees. Eaton Decl. ¶¶ 21–23.[6] Summaries of RRW's expert witness fees, document management fees, and computer legal research fees are attached as **Exs. C**, **D** and **E**, respectively.

The same equitable principles that allow a successful plaintiff in a breach of fiduciary duty case to recover its attorney fees permit RRW to recover the costs in it incurred with respect to these items.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff RRW respectfully requests that this Court enter an award of attorney's fees and non-taxable costs incurred in this matter.

DATED this 11th day of August, 2016.

McNAUL EBEL NAWROT & HELGREN PLLC

By: s/Malaika M. Eaton
Malaika M. Eaton, WSBA No. 32837
Claire Martirosian, WSBA No. 49528

600 University Street, Suite 2700
Seattle, Washington 98101-3143
Telephone (206) 467-1816
Facsimile (206) 624-5128
meaton@mcnaul.com
cmartirosian@mcnaul.com

Attorneys for Plaintiffs RRW Legacy Management Group, Inc. and Antoinette R. Walker

[6] RRW incurred $5,849.41 in fees for court reporters and deposition transcripts during this litigation. **Ex. F.** RRW does not seek these fees in this motion, as they are recoverable as taxable costs pursuant to 28 U.S.C. § 1920(2) (allowing recovery of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."). However, if any of those fees are not recoverable as taxable costs, they are recoverable as "related nontaxable expenses" in the instant motion. To the extent Defendant plans to argue that these fees are outside the ambit of 28 U.S.C. § 1920(2), the Court should award those fees here.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who receives CM/ECF notification.

DATED: August 11, 2016.

By: s/Malaika M. Eaton
Malaika M. Eaton, WSBA No. 32837



LAW OFFICES OF
McNaul Ebel Nawrot & Helgren PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816